IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THONG HACH,

    Petitioner,                    No. CIV S-10-0304 MCE EFB P

    vs.

MIKE McDONALD, Warden,

    Respondent.                  FINDINGS AND RECOMMENDATIONS

        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2007 judgment of conviction entered against him in the San Joaquin County Superior Court on charges of second degree murder and shooting at an occupied vehicle. He claims that the trial court violated his federal constitutional rights when it gave a jury instruction that allowed a second degree felony-murder conviction to be predicated on the underlying felony of shooting at an occupied vehicle. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

////

1

## I. Factual Background[1]

### FACTS

Defendant and Savy Yip lived together for over six years, since they were 17. They had two children, but never married. They lived with defendant's mother and brother. Yip's parents lived a house away.

Yip met Joshua Chace on a telephone chat line. After a few weeks, she started talking to him individually and considered him "somewhat" her boyfriend. Yip told Chace the father of her children was "not in the picture."

On August 19, 2005, Chace came to California from Massachusetts to see Yip. Yip told defendant she was going out with friends that night and picked Chace up at the airport. They spent the night together.

When Yip went home the next day, she and defendant got into an argument. She packed her things and went to her mother's. She spent the next four days with Chace.

The night before the incident, Yip returned home and fell asleep. While she was sleeping, Chace called. Defendant answered and Chace told him he was Yip's "man."

When Yip awoke the next afternoon, she and defendant argued. Yip told defendant she did not want to be with him. She left about 6:00 p.m. and went to Chace. They went to a park and talked.

Defendant claimed he was heartbroken and hurt when he found out about Chace. When Yip told him it was over, they argued and defendant said he might do something stupid. After Yip left, defendant waited several hours for her to return. Later that night defendant waved down a friend and got in his 4Runner with a gun; he wanted to bring Yip home. They went to four or five parks before they found Yip.

Around midnight, Yip and Chace were at Laughlin Park in the car with the seats reclined. Yip was in the driver's seat and Chace in the passenger seat. Yip saw headlights coming from behind. A car stopped in the middle of the road, about 15 feet away.

Defendant got out of the passenger side of the car. He had a gun in his hand and went to the driver's side of Yip's car. He tapped the

---

[1] In its partially published opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

2

> windshield with the gun and yelled, "'get out.'" Yip said "'no'" and "'don't shoot.'" Defendant started walking around the back of the car. Yip started the car. Chace told defendant he did not want any problems, and told Yip, "'just go, just go.'" Yip took off and made a u-turn. As she turned, she heard a shot.
>
> Yip kept driving. She noticed Chace was quiet and then heard him gasping for air; he did not move. She drove to the hospital. Chace died from a gunshot wound to the head.
>
> Defendant told the detective who interviewed him that he shot to scare Chace. At trial he testified he had the gun—an SKS rifle—below his waist. He ran after the car and shot in the air; he shot because he was angry and was not aiming. He was 10 feet from the car when he fired. On cross-examination, he testified "I shoot the gun in the air to lose my anger. I told the detective I tried to scare him. That is all."

*People v. Hach*, 176 Cal.App.4th 1450, 1452-1454 (2009).

## II.   Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

////

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010))

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

4

of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

5

review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

**B.  Petitioner's Claims**

On direct appeal, petitioner challenged a jury instruction given at his trial which allowed his second degree felony-murder conviction to be predicated on the underlying felony of shooting at an occupied vehicle.[3] After appellate briefing was concluded, but before a decision was rendered by the California Court of Appeal, the California Supreme Court issued *People v. Chun*, 45 Cal.4th 1172 (2009), in which it held that a second degree felony-murder conviction may not be predicated on the underlying felony of shooting at an occupied vehicle. In its decision on petitioner's appeal, the California Court of Appeal acknowledged that, in light of the *Chun* decision, the trial court in this case erred in instructing on second degree felony murder. However, the court concluded that the error was harmless under the prejudice standard enunciated in *Chun*.

In ground one of the petition before this court, petitioner claims that the harmless error standard adopted by the court in *Chun*, and relied on by the California Court of Appeal to deny his appellate claims, constitutes an unreasonable application of *California v. Roy*, 519 U.S. 2 (1996).  Dckt. 1 at 4, 18-23.  In grounds two through seven, petitioner claims that the state appellate court's application of that harmless error standard to this case constitutes an

---

[3] *See* Clerk's Transcript on Appeal (CT) at 372.

6

unreasonable determination of the facts. *Id.* at 4, 23-37. The last reasoned decision on these claims is the decision of the California Court of Appeal. *Id.* at 39-54. This court will therefore look to that decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859.

The California Court of Appeal concluded that the trial court erred in instructing the jury on felony murder. However, the court determined that the error was harmless. The court reasoned as follows:

> When defendant found his common law wife alone with her new lover in a car, he fired a single shot and killed Joshua Chace. A jury convicted him of second degree murder (Pen.Code, § 187)[4] and shooting at an occupied vehicle ( § 246). The jury found true the allegation that defendant personally discharged a firearm, causing death. (§ 12022.53, subd. (d).) The court sentenced defendant to state prison for 40 years to life.
>
> The jury was instructed on alternate theories of second degree murder, both malice aforethought and felony murder with shooting at an occupied vehicle as the predicate felony. Defendant contends the application of the felony-murder rule in this case violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution. He argues that since the merger rule of *People v. Ireland* (1969) 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580 (*Ireland*) precludes application of the felony-murder rule unless defendant has a purpose collateral and independent to assault, and since the evidence of defendant's purpose was conflicting, the trial court erred in failing to instruct the jury that it must find a collateral and independent purpose before it could rely on the felony-murder doctrine. Defendant contends permitting the jury to rely on the felony-murder rule without a jury finding of a collateral purpose violates his right to have the jury determine all factual issues beyond a reasonable doubt.
>
> After briefing in this case was complete, the California Supreme Court issued its opinion in *People v. Chun* (2009) 45 Cal.4th 1172, 91 Cal.Rptr.3d 106, 203 P.3d 425 (*Chun*). In *Chun*, the Supreme Court overruled prior decisions and held "that all assaultive-type crimes, such as a violation of section 246, merge with the charged homicide and cannot be the basis for a second degree felony-murder instruction." (*Id.* at p. 1178, 91 Cal.Rptr.3d 106, 203 P.3d 425.) In the published part of the opinion, we find that the trial court erred in instructing on second degree felony murder. However, as in *Chun*, we find the error was harmless and affirm the judgment.

---

[4] Hereafter, undesignated statutory references are to the Penal Code.

7

* * *

## I. Instructing on Second Degree Felony Murder Was Error, but not Prejudicial

Defendant contends that where, as here, second degree felony murder is based on shooting at an occupied vehicle, the merger rule of *Ireland, supra*, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580, requires the trier of fact to find beyond a reasonable doubt that defendant had a purpose in shooting that was independent of and collateral to assault. He contends that since the jury did not make the finding of an independent collateral purpose, his Sixth and Fourteenth Amendment rights to have the jury decide factual questions that affected his sentence or the degree of crime were violated. Finally, he asserts that since the jury was instructed on both murder with malice aforethought and felony murder, and it cannot be determined on which theory the jury relied, reversal is required.

The Attorney General agrees that a collateral purpose is required in this case for application of second degree felony murder. He asserts, however, that defendant's testimony that he fired over the car to scare Chace provided the necessary evidence of that collateral purpose. The Attorney General rejects the argument that the jury had to find the collateral purpose. "It is the trial court, not the jury, that decides which legal theories are warranted by the evidence."

After briefing in this case was complete, the California Supreme Court issued its opinion in *Chun, supra*, 45 Cal.4th 1172, 91 Cal.Rptr.3d 106, 203 P.3d 425, which substantially altered the law on second degree felony murder. We requested supplemental briefing from the parties on the effect of *Chun* on this case.

In *Chun*, the 16–year–old defendant and three other gang members were in a Honda stopped at a street light. Gunfire erupted from the Honda toward a stopped Mitsubishi, killing a passenger and wounding two others. (*Chun, supra*, 45 Cal.4th at p. 1179, 91 Cal.Rptr.3d 106, 203 P.3d 425.) Defendant was tried as an adult and charged with murder, two counts of attempted murder, shooting at an occupied vehicle, discharging a firearm from a vehicle, all with gang and firearm-use allegations, and street terrorism. (*Ibid.*)

Although the prosecution sought a first degree murder conviction, the court also instructed the jury on second degree felony murder based on shooting at an occupied motor vehicle (§ 246) either directly or as an aider and abettor. The jury returned a verdict of second degree murder. It found the personal use allegation not true, but found a principal intentionally used a firearm and the shooting was for the benefit of a criminal street gang. The jury

8

acquitted defendant of both counts of attempted murder, shooting from a vehicle and shooting at an occupied motor vehicle. Defendant was convicted of being an active participant in a criminal street gang. (*Chun, supra*, 45 Cal.4th at pp. 1179–1180, 91 Cal.Rptr.3d 106, 203 P.3d 425.)

The California Supreme Court granted review to determine if the trial court prejudicially erred in instructing on second degree felony murder. (*Chun, supra*, 45 Cal.4th at p. 1180, 91 Cal.Rptr.3d 106, 203 P.3d 425.)

First, the Supreme Court addressed the defendant's claim that second degree felony murder violates separation of powers as a judicially created doctrine with no statutory basis. (*Chun, supra*, 45 Cal.4th at p. 1183, 91 Cal.Rptr.3d 106, 203 P.3d 425.) The court held that the "'abandoned and malignant heart'" language of section 188 contains within it the common law second degree murder rule. (*Chun, supra*, at p. 1187, 91 Cal.Rptr.3d 106, 203 P.3d 425.) Second degree felony murder is based on statute and "stands on firm constitutional ground." (*Id.* at p. 1188, 91 Cal.Rptr.3d 106, 203 P.3d 425.)

The court then considered the effect of the merger rule of *Ireland, supra*, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580. After reviewing the court's jurisprudence in this area, the court held the state of the law regarding the *Ireland* merger doctrine was problematic, and found it necessary "to reconsider our merger doctrine jurisprudence." (*Chun, supra*, 45 Cal.4th at p. 1198, 91 Cal.Rptr.3d 106, 203 P.3d 425.) Disapproving prior decisions, the court set forth a different test of merger. "When the underlying felony is assaultive in nature, such as a violation of section 246 or 246.3, we now conclude that the felony merges with the homicide and cannot be the basis of a felony-murder instruction." (*Chun, supra*, at p. 1200, 91 Cal.Rptr.3d 106, 203 P.3d 425.) Although the court declined to determine "exactly what felonies are assaultive in nature," it held that "shooting at an occupied vehicle under section 246 is assaultive in nature and hence cannot serve as the underlying felony for purposes of the felony-murder rule." (*Ibid.*, fn. omitted.)

Here the trial court instructed on felony murder with shooting at an occupied vehicle as the predicate felony. Under *Chun*, this instruction was error.

To determine whether the error was prejudicial, we again look to *Chun*. The *Chun* court first noted that although the jury was not given specific instructions on implied malice second degree murder, CALJIC Nos. 8.30 and 8.31, the other instructions were sufficient to base a second degree murder conviction on either malice or felony murder. (*Chun, supra*, 45 Cal.4th at pp. 1202–1203, 91 Cal.Rptr.3d 106, 203 P.3d 425.) Here the trial

9

court fully instructed the jury on second degree murder under either implied malice or felony murder theories.[5]

In determining whether the instructional error was prejudicial, the *Chun* court relied on a test set forth by Justice Scalia in a concurring opinion in *California v. Roy* (1996) 519 U.S. 2 [136 L.E.2d 266].)  In *Roy*, the error was permitting a defendant to be convicted of a crime as an aider and abettor solely due to his knowledge of the crime, without requiring a finding he shared the perpetrator's intent.  The *Chun* court found this error similar to that in the case at hand, where the defendant could be convicted of felony murder without requiring a finding of a valid theory of malice.  (*Chun, supra*, 45 Cal.4th at p. 1204, 91 Cal.Rptr.3d 106, 203 P.3d 425.)  In his concurring opinion in *Roy*, Justice Scalia stated the test for prejudice thus: "The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict did find without finding this point as well."  (*Roy, supra*, 519 U.S. at p. 7, 117 S.Ct. 337 (conc. opn. of Scalia, J.), italics omitted.)  The *Chun* court found this test worked well for an improper instruction on second degree felony murder.  "If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice, the erroneous felony-murder instruction was harmless."  (*Chun, supra*, at p. 1205, 91 Cal.Rptr.3d 106, 203 P.3d 425.)

Applying this test, the court found any juror who relied on felony murder "necessarily found that defendant willfully shot at an occupied vehicle." (*Chun, supra*, 45 Cal.4th at p. 1205, 91 Cal.Rptr.3d 106, 203 P.3d 425.)  The undisputed evidence was that three people in the car were hit by multiple gunshots fired at close range.  The *Chun* court concluded: "No juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice.  In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice. The error in instructing the jury on felony murder was, by itself, harmless beyond a reasonable doubt."  (*Ibid.*)

Defendant argues the facts of this case are distinguishable and do not compel a conclusion that the jury found malice.  Here defendant acted alone—from personal, not gang motives—and fired only once.  Defendant contends his actions show only a

---

[5] The *Chun* court referred to implied malice as "conscious-disregard-for-life malice." (*Chun, supra*, 45 Cal.4th at p. 1181, fn. 2, 91 Cal.Rptr.3d 106, 203 P.3d 425.)

10

conscious indifference to the possibility of death, not the conscious disregard for life required for implied malice. Defendant relies on cases involving shooting at an inhabited dwelling, which hold an intent to strike the building is not required, only a reckless disregard or conscious indifference to the probable consequences. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433, 45 Cal.Rptr.2d 148; *People v. Chavira* (1970) 3 Cal.App.3d 988, 993, 83 Cal.Rptr. 851.)

We find the harmless error analysis of *Chun* applicable. To find defendant guilty of second degree felony murder, a juror must have found he willfully shot at an occupied vehicle. Indeed, we know the jury so found because, unlike in *Chun*, the jury convicted defendant of violating section 246. The factual distinctions from *Chun* are not significant. Defendant was only 10 feet away from the car and knew there were two people in it. He fired an SKS rifle directly into the car. As in *Chun*, the jury must have found defendant committed an act that is dangerous to life, knew of the danger, and acted with conscious disregard for life. In other words, the jury found defendant acted with implied malice. Accordingly, as in *Chun*, the error in instructing on second degree felony murder was harmless beyond a reasonable doubt.

One distinction from *Chun* is that the jury in this case was presented with voluntary manslaughter. Therefore, we consider whether the error in instructing on second degree felony murder was not harmless because its effect was to remove from the case defendant's defense of heat of passion provocation to reduce the killing to manslaughter. In denying defendant's motion for a new trial, the trial court noted the "problem" with felony murder is that it does not permit mitigation to manslaughter.

Here the trial court instructed the jury on heat of passion manslaughter. The defense argued the killing was provoked by heat of passion. The jury, however, was instructed: "Provocation does not apply to a prosecution under a theory of felony murder."

We find defendant's heat of passion defense does not render the instruction on felony murder prejudicial because the facts of this case are inadequate to reduce the killing to manslaughter as a matter of law.

Voluntary manslaughter is an unlawful killing without malice "upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) "Heat of passion arises when 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.' [Citation.]" (*People v. Barton* (1995) 12 Cal.4th 186, 201, 47 Cal.Rptr.2d 569, 906 P.2d 531.) "[T]he killing must be 'upon a sudden quarrel or

11

heat of passion' (§ 192); that is, 'suddenly as a response to the provocation, and not belatedly as revenge or punishment. Hence, the rule is that, if sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.' [Citation.]" (*People v. Daniels* (1991) 52 Cal.3d 815, 868, 277 Cal.Rptr. 122, 802 P.2d 906.)

Here there was no "sudden quarrel or heat of passion." Defendant fired after Yip refused his instruction to get out of the car. Rather than provoking defendant, Yip begged him not to shoot and Chace told defendant he did not want any problems.

To be sure, there was quarreling and defendant's passion was aroused, but this provocation occurred over several days. Defendant and Yip quarreled days before the shooting and she left him and went to Chace. The night before the killing, defendant spoke with Chace, who told defendant he was Yip's "man." Defendant and Yip quarreled again the next afternoon and she left about 6:00 p.m. Defendant waited several hours for her to return. When she did not, he got a ride from a friend and searched several parks looking for her. When he found her, he shot Chace.

This smoldering jealousy leading to a fatal act is similar to that in *People v. Hudgins* (1967) 252 Cal.App.2d 174, 60 Cal.Rptr. 176, where defendant, consumed with jealousy, beat and threatened his wife. He broke into a house and shot the man he believed was his wife's paramour. The court found no evidence to support an instruction on heat of passion manslaughter. "There was no evidence of a sudden quarrel, but only proof of a violent attack by an armed man upon one who was unarmed and who made a futile attempt to save his own life. There was no sudden heat of passion, but only evidence of a persistent, brooding jealousy which spurred appellant to a decision to arm himself and lie in wait for a victim. All the evidence indicated it was not a sudden, impetuous decision, acted upon without time and opportunity for reflection and the cooling off of suddenly aroused emotion. It was a decision reached after long deliberation and meditation, and careful preparation to carry into execution the threats appellant had repeatedly uttered. Upon these facts the killing was not manslaughter; it was, at the least, murder of the second degree." (*Id.* at p. 181, 60 Cal.Rptr. 176.)

Defendant had sufficient time to cool down after his quarrel with Yip the afternoon of the shooting. (*People v. Middleton* (1997) 52 Cal.App.4th 19, 34, 60 Cal.Rptr.2d 366, *disapproved on another ground* in *People v. Gonzalez* (2003) 31 Cal.4th 745, 752, fn. 3, 3 Cal.Rptr.3d 676, 74 P.3d 771.) In *Middleton*, the defendant incapacitated his attacker and could have fled on foot or called the police. Instead, he chose to return and get his gun. He then shot the attacker. The court found no substantial evidence of provocation. "His return from the doorway represented a distinct

12

> and divisible event in the sequence of events and provided him sufficient time to 'cool down.' '[I]f sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter—"the assailant must act under the smart of that sudden quarrel or heat of passion." [Citation.]' [Citation.]" (*Middleton, supra* 52 Cal.App.4th at p. 34, 60 Cal.Rptr.2d 366.)
>
> There was insufficient evidence of heat of passion manslaughter. The trial court's error in instructing on second degree felony murder was harmless beyond a reasonable doubt.

*People v. Hach*, 176 Cal.App.4th at 1454-1459.

### 1. The Harmless Error Standard Used by the California Court of Appeal

As set forth above, petitioner claims in his first ground for relief that the harmless error standard adopted by the court in *Chun*, and relied on by the California Court of Appeal to deny his appellate claims, constitutes an unreasonable application of *California v. Roy*, 519 U.S. 2 (1996). Dckt. 1 at 4, 18-23. Petitioner points to the concurring opinion in *Roy* by Justice Scalia, which describes the harmless error test as follows: "The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict did find without finding this point as well." *Roy*, 519 U.S. at 7. In *Chun*, the California Supreme Court specifically adopted this test, and then went on to explain: "If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice, the erroneous felony-murder instruction was harmless." *Chun*, 45 Cal.4th at 1205. Petitioner argues that "although it appears that the *Chun* court intended to adopt Justice Scalia's test verbatim, the test it actually announced is different from – and markedly less stringent – than the one he articulated in *Roy*. Dckt. 1 at 20. Petitioner explains:

> There is, of course, a crucial difference between finding it *impossible* that the jury did not make the findings that support conviction under a valid theory of law; as Justice Scalia's standard requires, and merely asking the prosecution to show *beyond a reasonable doubt* that the jury did not do so. That difference

////

>>constitutes an unreasonable application of United States Supreme Court precedent.

*Id.*

The harmless error test articulated in *Chun*, and used by the state appellate court in this case, was not an unreasonable application of *Roy* because of the difference in language quoted above. The court in *Chun* stated that the *Roy* harmless error test "works well here, and we will use it." 45 Cal.4th at 1204-05. This court will assume that the *Chun* court meant what it said, and that it employed the harmless error test as that test was articulated in *Roy*. Under these circumstances, the state court's use of the *Chun* harmless error standard was not an unreasonable application of *Roy*. This court also notes that, on direct review of a state court criminal judgment, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). Here, the California Court of Appeal found "beyond a reasonable doubt" that the trial court's instructional error in this case did not have an adverse effect on the verdict. *Hach*, 176 Cal.App.4th at 1459. It thereby performed the correct harmless error analysis for a constitutional violation under *Chapman*.[6]

The harmless error test employed by the California Court of Appeal in this case cited the appropriate federal authority and utilized the correct standards to find that the trial court's instructional error was harmless beyond a reasonable doubt. Therefore, petitioner is not entitled to relief on his claim that the harmless error test utilized by the California Court of Appeal in this case was an unreasonable application of United States Supreme Court authority.

---

[6] In *Chun*, the California Supreme Court correctly noted that "instructional error regarding the elements of the offense requires reversal of the judgment unless the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict." 45 Cal.4th at 1201. In support of this proposition, the *Chun* court cited *Hedgpeth v. Pulido*, 555 U.S. ___, 129 S.Ct. 530 (2008) (applying harmless error test enunciated in *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), in context of jury instructions on multiple theories of guilt, one of which is invalid) and *Neder v. California*, 527 U.S. 1, 11, 15 (1999) (erroneous jury instruction that omits element of offense is subject to *Brecht* harmless-error analysis).

14

### **2. Whether the Trial Court's Instructional Error was Harmless**

Petitioner also claims that the California Court of Appeal's application of the *Chun* standard of prejudice is based on an unreasonable determination of the facts of this case. He argues that the evidence did not demonstrate beyond a reasonable doubt that he acted with implied malice when he shot victim Chace. Dckt. 1 at 6. He contends that there is no evidence regarding what his intent was when he shot at the occupied vehicle. *Id.* He argues that the factual differences between this case and *Chun* were "significant" and that neither the verdict nor the circumstances of the crime demonstrate that the jury "necessarily made the findings required for implied malice murder." *Id.* at 5. Petitioner further argues that "the first and most compelling difference between this case and *Chun* is that here, the jury did not acquit Mr. Hach of shooting at an inhabited vehicle," but "on the contrary, it found him guilty of the same offense that underlay the invalid felony murder instruction." *Id.*[7]

In *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007), the United States Supreme Court clarified that the AEDPA did not replace the traditional test for prejudice on collateral review established in *Brecht*.[8] After *Fry*, a federal habeas court "need not conduct an analysis under AEDPA of whether the state court's harmlessness determination on direct review – which is governed by the

---

[7] Petitioner's specific claims are as follows: In ground two, petitioner claims that "the Court of Appeal's application of the *Chun* standard of prejudice constitutes an unreasonable determination of the facts." Dckt. 1 at 4. In ground three, petitioner claims that the trial court's instructional error was not harmless. *Id.* at 5, 24-25. In ground four, petitioner claims that his jury "did not acquit [him] of shooting at an inhabited vehicle, so other aspects of the verdicts do not 'strongly suggest' that the murder verdict was based on a valid theory of malice." *Id.* at 5, 26-27. In ground five, petitioner claims that the facts of his offense do not "compel a conclusion beyond a reasonable doubt that the jury found that [he] acted with the conscious-disregard-for-life required for implied malice." *Id.* at 6, 27-29. In ground six, petitioner claims that "the verdict that [he] committed a shooting at an inhabited vehicle did not include any finding on his intent in shooting 'at' the occupied vehicle." *Id.* at 6, 30-31. In ground seven, petitioner claims that "the intent for shooting at an occupied vehicle is not legally equivalent to implied malice." *Id.* at 6, 31-37.

[8] On collateral review of a state court criminal judgment under 28 U.S.C. § 2254, an error is harmless unless it had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 631.

15

'harmless beyond a reasonable doubt" test set forth in [*Chapman*] was contrary to or an unreasonable application of clearly established federal law." *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010). Rather, "in § 2254 proceedings a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* 507 U.S. 619, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18." *Fry*, 551 U.S. at 121-22. "When a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's determination is objectively unreasonable." *Towery v. Schriro* 641 F.3d 300, 307 (9th Cir. 2010). Further, a state court's decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." *Cooper v. Brown*, 510 F.3d 870, 921 (9th Cir. 2007) (citations omitted).

The California Court of Appeal found beyond a reasonable doubt that the trial court's error in instructing the jury on felony-murder did not have an adverse effect on the verdict because the evidence supported a second degree murder conviction on an implied malice theory. The appellate court noted that from only 10 feet away, petitioner fired a rifle directly into a vehicle which he knew contained two people. The court concluded that, in light of these facts, the jury must have found petitioner acted with implied malice in that he committed an act that is dangerous to life, knew of the danger, and acted with conscious disregard for life. This conclusion is not objectively unreasonable. As was the case in *Chun*, "no juror could have found that defendant participated in this shooting . . . without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice." 45 Cal.4th at 1205. Put another way, it would be impossible for the jury to find petitioner guilty on a felony-murder theory, with shooting at an occupied vehicle as the predicate felony, without also finding that he acted with implied malice.

16

Because the facts of this case fully support a finding of guilt on a theory of implied malice, the trial court's erroneous instruction on felony-murder did not have a substantial and injurious effect or influence on the verdict. The decision of the California Court of Appeal to the same effect should not be set aside.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: January 4, 2012.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE